## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FREEDOM DEFENSE INITIATIVE<br>1040 First Avenue<br>Room 121<br>New York, New York 10022<br><br>PAMELA GELLER<br>1040 First Avenue<br>Room 121<br>New York, New York 10022<br><br>and<br><br>ROBERT SPENCER<br>373 South Willow Street, #109<br>Manchester, New Hampshire 03103<br><br>    Plaintiffs,<br><br>    -v.-<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY<br>600 Fifth Street N.W.<br>Washington, D.C. 20001<br><br>    Defendant. | Case No.<br><br><br>**COMPLAINT**<br>[Civil Rights Action under<br>42 U.S.C. § 1983] |

Plaintiffs American Freedom Defense Initiative (hereinafter referred to as "AFDI"), Pamela Geller, and Robert Spencer (collectively referred to as "Plaintiffs"), by and through their undersigned counsel, bring this Complaint against Defendant Washington Metropolitan Area Transit Authority (hereinafter referred to as "Defendant" or "WMATA"), its employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

### INTRODUCTION

1.    This case seeks to protect and vindicate fundamental constitutional rights. It is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, challenging Defendant's restriction on Plaintiffs' right to

1

engage in protected speech in a public forum created by Defendant based on the content and viewpoint of Plaintiffs' message (hereinafter referred to as "Free Speech Restriction"). Defendant's Free Speech Restriction prohibited Plaintiffs from displaying advertisements on Defendant's property during the scheduled time set forth in the contract with Defendant's advertising agent.

2. Defendant informed Plaintiffs through its advertising agent that the rationale for Defendant's refusal to display Plaintiffs' advertisement pursuant to the terms of the agreement was based on "world events" and an unfounded fear that certain persons would react negatively to the content and viewpoint expressed by Plaintiffs' message.

3. Plaintiffs seek a declaration that Defendant violated their clearly established constitutional rights as set forth in this Complaint; a declaration that Defendant's Free Speech Restriction violates the U.S. Constitution and 42 U.S.C. § 1983 as set forth in this Complaint; a preliminary and permanent injunction enjoining the enforcement of Defendant's Free Speech Restriction as set forth in this Complaint; and nominal damages for the past loss of Plaintiffs' constitutional rights. Plaintiffs also seek an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

4. This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

5. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Plaintiffs' claim for nominal damages is authorized by 42 U.S.C. § 1983.

6. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## PLAINTIFFS

7. Plaintiff AFDI is an organization that is incorporated under the laws of the State of New Hampshire. AFDI's specific objective is to go on the public relations offensive when legal, academic, legislative, cultural, sociological, and political actions are taken to dismantle our basic freedoms and values.

8. AFDI achieves its objective through a variety of lawful means, including through the exercise of its right to freedom of speech under the U.S. Constitution.

9. AFDI exercises its right to freedom of speech and promotes its objectives by, *inter alia*, purchasing advertising space on transit authority property in major cities throughout the United States, including Washington, D.C. AFDI purchases these advertisements to express its message on current events and public issues, particularly including issues involving Islam, sharia, Israel, and the Middle East (hereinafter referred to as "ADFI's advertising campaign").

10. Plaintiff Pamela Geller is the Executive Director of AFDI, and she engages in protected speech through AFDI's activities, including AFDI's advertising campaign.

11. Plaintiff Robert Spencer is the Associate Director of AFDI, and he engages in protected speech through AFDI's activities, including AFDI's advertising campaign.

## DEFENDANT

12. Defendant WMATA is a government agency that was established through a congressionally approved interstate compact to provide public transportation in the Washington D.C. metropolitan area.

**STATEMENT OF FACTS**

13. As a government agency, the WMATA is mandated to comply with the First and Fourteenth Amendments to the U.S. Constitution.

14. The WMATA leases the free-standing dioramas inside its subway stations for use as advertising space.

15. The WMATA accepts both public service and commercial advertisements for its advertising space.

16. The WMATA has leased its subway advertising space for political and social commentary advertisements covering a broad spectrum of political views and ideas.

17. The WMATA has leased its advertising space for a political advertisement that was pro-Palestine and anti-Israel and which displayed the message: "End U.S. military aid to Israel" (hereinafter referred to as "Anti-Israel Advertisement").

18. By policy and practice, the WMATA has intentionally dedicated its advertising space to expressive conduct thereby creating a public forum for speech.

19. Accordingly, the WMATA permits, as a matter of policy and practice, a wide variety of commercial, noncommercial, public-service, public-issue, and political advertisements on its advertising space (hereinafter "Free Speech Policy").

20. Pursuant to the WMATA's Free Speech Policy and particularly in light of the fact that the WMATA displayed the Anti-Israel Advertisement, Plaintiffs submitted for approval an advertisement that stated, "In Any War Between the Civilized Man and the Savage, Support the Civilized Man.  Support Israel.  Defeat Jihad." (hereinafter referred to as "Pro-Israel Advertisement").

21. Plaintiffs' Pro-Israel Advertisement is political speech in direct response to the Anti-Israel Advertisement. The Anti-Israeli Advertisement suggests that Israel's military is the impediment to peace between the Israelis and Palestinians and that U.S. military aid to Israel also acts as an impediment to peace between the Israelis and Palestinians. In other words, the Anti-Israel Advertisement blames Israel, its military, and U.S. military aid to Israel as the cause of Palestinian terror directed against innocent civilians in Israel and abroad.

22. Plaintiffs' Pro-Israel Advertisement presents the message that there is no comparison or equivalence between savage civilian-targeting violence and Israel's civilized struggle for survival in a part of the world where civilized behavior is overshadowed by terrorism and violence, as evidenced by the current world events playing out in Egypt, Libya, and elsewhere.

23. Consequently, the message of Plaintiffs' Pro-Israel Advertisement is very timely in light of these current events in which Muslims are engaging in violent jihad in response to America's policy toward the Middle East and to allegedly protest speech deemed critical of Islam.

24. Plaintiffs' Pro-Israel Advertisement was approved for display on the WMATA advertising space. The advertisement satisfied all of the WMATA's guidelines for acceptable advertising.

25. Accordingly, on September 6, 2012, Plaintiffs entered into a contract with CBS Outdoor, which acts as the advertising agent for the WMATA, to place their Pro-Israel Advertisement on four dioramas. Pursuant to the contract, the "advertising period" for the display was to begin on September 24, 2012 and end on October 21, 2012.

26.     Under the contract, the "period cost" for the display of Plaintiffs' Pro-Israel Advertisement was $5,600, which Plaintiffs promptly paid via credit card on September 10, 2012.

27.     Plaintiffs' approved and paid-for Pro-Israel Advertisement is as follows:



28.     On September 18, 2012, Plaintiff Geller received the following notice via email from Mr. Howard Marcus, the CBS Outdoor agent working on behalf of the WMATA: "The DC Transit Authority has informed me today that due to the situations happening around the world at this time, we are postponing the start of this program to a future date to be determined." (hereinafter referred to as "Free Speech Restriction").

29.     Plaintiff Geller promptly responded as follows: "I want to see this from the transit authority. It is precisely because of the current political situation that it is important that I be able to express my message now, and I consider any delay to be government censorship of my core political speech." Plaintiff Geller demanded that the WMATA change its position.

30.     Mr. Marcus responded that same day, confirming that the WMATA has not changed its position, citing "world events and a concern for the security of their passengers" as the basis for "deferring" the display of Plaintiffs' advertisement.

31. By delaying Plaintiffs' speech "to a future date to be determined" on account of "world events," the WMATA is censoring Plaintiffs' core political speech on the basis of its viewpoint. That is, the WMATA does not want to display a message that it deems to be critical of Islam, critical of jihad, or supportive of Israel in light of these "world events."

32. The WMATA's speech restriction is based on the perceived negative response that Plaintiffs' message might receive from certain viewers based on its content and viewpoint. However, a viewer's reaction to speech is not a content-neutral basis for regulation. This is known as a "heckler's veto," which is impermissible under the First Amendment.

33. Under the First Amendment, speech cannot be punished or banned simply because it might offend a hostile mob. By delaying the display of Plaintiffs' advertisement because of its message, the WMATA is punishing Plaintiffs' speech based on its content and viewpoint.

34. Pursuant to clearly established First Amendment jurisprudence, the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury sufficient to warrant injunctive relief.

## FIRST CLAIM FOR RELIEF

### (Freedom of Speech—First Amendment)

35. Plaintiffs hereby incorporate by reference all stated paragraphs.

36. By reason of the aforementioned Free Speech Restriction, created, adopted, and enforced under color of state law, Defendant has deprived Plaintiffs of their right to engage in protected speech in a public forum in violation of the Free Speech Clause of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

37. Defendant's Free Speech Restriction is content- and viewpoint-based in violation of the Free Speech Clause of the First Amendment.

38. As a direct and proximate result of Defendant's violation of the Free Speech Clause of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## SECOND CLAIM FOR RELIEF

### (Equal Protection—Fourteenth Amendment)

39. Plaintiffs hereby incorporate by reference all stated paragraphs.

40. By reason of the aforementioned Free Speech Restriction, created, adopted, and enforced under color of state law, Defendant has unconstitutionally deprived Plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, in that Defendant is preventing Plaintiffs from expressing a message based on its content and viewpoint, thereby denying the use of a public forum to those whose views Defendant finds unacceptable.

41. As a direct and proximate result of Defendant's violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and nominal damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs ask this Court:

A) to declare that Defendant's Free Speech Restriction violates the First and Fourteenth Amendments to the U.S. Constitution as set forth in this Complaint;

B)	to temporarily, preliminarily, and permanently enjoin Defendant's Free Speech Restriction and its application to Plaintiffs' speech as set forth in this Complaint;

C)	to award Plaintiffs nominal damages for the past loss of their constitutional rights as set forth in this Complaint;

D)	to award Plaintiffs their reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

E)	to grant such other and further relief as this Court should find just and proper.

Respectfully submitted,

AMERICAN FREEDOM LAW CENTER

_____
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

/s/ David Yerushalmi
David Yerushalmi, Esq. (DC Bar No. 978179)
1901 Pennsylvania Avenue NW, Suite 201
Washington, D.C. 20001
david.yerushalmi@verizon.net
Tel: (646) 262-0500
Fax: (801) 760-3901